J. P. O'SHAUGHNESSY ET AL. V. JAMES MOORE.

No. 2692.

**Homestead.**—When a deed absolute is made by the husband and wife for the homestead and it is reconveyed to them by deed, reserving a lien for unpaid purchase money, the real object of both conveyances being to secure a loan of money to the husband and wife, no lien attaches.

APPEAL from Galveston. Tried below before Hon. Wm. H. Moore, special district judge.

In addition to the facts stated in the opinion the following is contained in the record:

The defendant, J. P. O'Shaughnessy, testified that about the first of April, 1886, he and his wife, who were then living on lots 8, 9, 10, 11, and 12 in outlot 138 in Galveston as their homestead, disagreed about something, and agreed to sell their homestead and cease living together. O'Shaughnessy told an attorney, W. B. Denson, of their disagreement, and according to his testimony Denson told him that if he was willing to pay twelve per cent interest he could borrow two thousand dollars on the place, and pay his wife for her share, and that the papers could be made up so that it would appear as a sale. To this O'Shaughnessey replied that he only needed eighteen hundred dollars. Denson replied that he could get the money from Mr. Moore (the appellee). After some further conversation the appellants made their power of attorney to Denson to enable him to convey the property. According to Denson he was acting as the attorney of O'Shaughnessy and his wife to effect a sale for the division of the property. With Moore, the appellee, Denson looked at the place, and he executed his power by selling the property to Moore for four thousand dollars. Neither Denson nor Moore seemed able to recollect whether Moore paid Denson the four thousand dollars purchase money or not. Moore on cross-examination testified that the result of the whole transaction was "that I found an investment of eighteen hundred dollars at twelve per cent interest." That was the amount of money which O'Shaughnessy told Denson he needed.

Denson testified that Moore told Mrs. O'Shaughnessy that he would not buy the place unless she was perfectly willing to sell it. Denson testified that he did not know whether Mrs. O'Shaughnessy comprehended the transaction or not, but that she seemed to understand it and approved the sale. O'Shaughnessy testified that the consideration of four thousand dollars was never paid to him. He also testified that it was understood between himself, Denson, and Moore that the latter would lend O'Shaughnessy eighteen hundred dollars on the place. He had had feelings against his wife on account of their disagreement. He testified that it was understood that he was to get eighteen hundred dollars with which to pay his wife and the expenses of the transaction, and that "the place

should come back to me and that we should keep it from my wife." After the deed was made Denson and Moore (according to O'Shaughnessy's evidence) went on the premises and informed the wife of O'S. that it was sold to Moore, who had rented it out. The husband testified that he then ordered his wife to leave the place, hard feelings between them still existing, and that she obeyed him and left it. She testified that when she found out the character of the transaction she moved back to the house and had since lived there.

The deed from Denson to Moore was dated April 9, 1886, and on April 10, 1886, Moore reconveyed the property to J. P. O'Shaughnessy for the same recited consideration, $2200 of which it declared was paid and $1800 unpaid and secured by notes, the collection of which was the object of this suit.

Denson testified that the transaction was fair and in good faith. He received $50 for drawing up the deeds and $250 for making the sale. This, it would appear, was taken from the $1800 with which the husband expected to compensate his wife for her interest in the homestead. She testified that Col. Denson gave her a bank book, presented on the trial, in which was found the following entry:

*Ball, Hutchings & Co.,*
*In account with Mrs. Mary O'Shaughnessy.*

| Dr. | | 1886. | Cr. |
|---|---|---|---|
| April 16, deposit...... $1,500 44 | May 10, check.......... | | $300 00 |
| | September 1, check..... | | 600 00 |
| | September 16, check.... | | 531 50 |
| | January 26, 1887, check, | | 68 94 |
| $1,500 44 | | | $1,500 44 |

Mrs. O'Shaughnessy testified that she heard about the deed to her husband at Col. Denson's office, when Col. Denson gave her the bank book. "I went to Col. Denson's office and he made me take the book. He never gave me any money. I never deposited any money with Ball, Hutchings & Co. When Col. Denson gave me the book I told him that I did not want to leave my home; if anything was done I wanted a right sale. He told me there was $1500 in bank of Ball, Hutchings & Co. for my part. Of that I gave $790 to Mr. O'Shaughnessy and $530 to Mr. Moore. The reason I gave the $530 to Mr. Moore was because he told me that I would lose my home if I did not pay him the money. I can not sign my name. They gave me some papers and Mr. Moore went to the bank and got out the money. I went to the bank myself when I got the $790 which I loaned to Mr. O'Shaughnessy."

The payment to Moore was on her husband's note. She never executed the notes, and testified that she made the payment to Moore because he

and Denson had told her that she would lose her home unless she paid the notes her husband had made.

The daughter of O'Shaughnessy testified that Moore told her mother that she must leave the place, for he had rented it to another party; that she did not wish to leave it, and that she wanted time to find a place for her cattle and chickens, but the father (her husband) told her that unless she left right away there would be bloodshed, and that she left, remaining away about a week, when she returned and had occupied the place as her home ever since.

Among other things O'Shaughnessy testified that it was "made up between Col. Denson and myself that my wife should know nothing about the matter at all; that I should borrow the money ($1800), and my wife should know nothing about the matter at all."

This was denied by Denson.

Moore testified that the place was worth over $4000, and though asserting the good faith of both deeds and the entire transaction, he testified that the result of the entire negotiation was the investment of $1800 of his money at 12 per cent.

No witness testified that the purchase money of $4000 was ever paid to Moore, and it would seem from the entire evidence that J. P. O'Shaughnessy never received for himself any money from Moore.

The record is voluminous and the evidence conflicting in many particulars.

*John Lovejoy* and *W. M. Jerdone,* for appellant.—Where the property is unquestionably the homestead, under the imperative provisions of our Constitution no conveyance or series of conveyances, however artfully contrived or skillfully worded, however absolute on their face and apparently straightforward, and however many parties there may be through whom the property may be passed, and notwithstanding the name the parties may call the transaction or their description of it in said conveyances, can be otherwise than absolutely void where the facts and surrounding circumstances fairly taken together and considered as a whole clearly indicate the object and ultimate purpose to be the pledging of the homestead for a loan of money. Heidenheimer Bros. v. Stewart, 65 Texas, 321; Hurt v. Cooper, 63 Texas, 362; Inge & Boring v. Cain, 65 Texas, 75.

*Davis & Davidson,* for appellee.—The husband and wife whether living together in peace or separated as to bed and board have the right to sell their homestead, and a sale once made can not be revoked at the pleasure of either or both of the spouses without the consent of the purchaser, and in any event without returning the purchase money. Pierce v. Fort, 60 Texas, 464; Edwards v. Dismukes, 53 Texas, 605; McDannell v. Harrell, 1 Posey's U. C., 521.

The sale to Moore being valid he had the right to resell to O'Shaughnessy as well as to any one else; and under the circumstances, in view of their conduct and the relations existing between him and his wife, he was justified in doing so, and neither law nor equity require his sacrifice simply because the homestead was the subject of sale.    Jordan v. Brophy, 41 Texas, 284; Amended Rule 27, Sup. Court, Jan. 21, 1882; Rev. Stats., art. 1333; Ins. Co. v. Milliken, 64 Texas, 48.

Stayton, Chief Justice.—This action was brought by appellee to enforce the payment of notes executed to him by J. P. O'Shaughnessy, which he claims were executed for certain property sold by him to the maker of the notes on which he seeks to enforce a vendor's lien evidenced by a trust deed.

The defendants alleged that on April 9, 1886, and for a long time prior thereto, the property on which the lien is claimed was their homestead, and that while so occupied by them a fictitious sale was made through a power of attorney executed by both husband and wife, whereby the title was apparently vested in appellee.   They claim, however, that this was but a part of a transaction through which the appellee intended only to secure a lien by way of mortgage to secure the payment of a loan of \$1800 made by appellee to the husband.

The deed made to appellee bears date April 9, 1886, and was acknowledged on the next day.   Appellee made a deed reconveying the same property to J. P. O'Shaughnessy, which bears date April 10, 1886, and was acknowledged the same day.

The deed to appellee purports to have been made in consideration of \$4000 in hand paid, while that from him purports to be on same consideration, of which it recites \$2200 paid and the balance (\$1800) secured by four promissory notes executed by James P. O'Shaughnessy to appellee, bearing 12 per cent interest per annum.   Of these are the notes sued upon.

The testimony offered for the defendants shows clearly that the whole transaction, while assuming the form of an absolute sale of the homestead, was intended and understood by appellee, James P. O'Shaughnessy, and the attorney who negotiated the transaction, as but a means whereby a loan of \$1800 by appellee to O'Shaughnessy should be secured, of all of which Mrs. O'Shaughnessy was kept ignorant.

The testimony for appellee tends to show that the sale of the homestead was real, but it develops such facts as are inconsistent with such a conclusion.

The Constitution of this State provides that "no mortgage, trust deed, or other lien on the homestead shall ever be valid except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage or trust deed or other lien shall have been created by the husband alone or together with his wife, and all pre-

tended sales of the homestead involving any condition of defeasance shall be void." This is the law of the land, and must be observed.

We have given all the evidence in this cause a careful consideration,. and while in view of the fact that the judgment will be reversed we feel that it would be improper to discuss in detail the evidence, we feel compelled to hold that the direct and circumstantial evidence offered is such as to forbid the affirmance of the judgment of the court below, and for· this reason its judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 26, 1889.