### J. P. O'SHAUGHNESSY ET AL. v. JAMES MOORE.

#### No. 2824.

**Sale of Homestead.**—Husband and wife about to separate, executed a power of attorney to a lawyer authorizing them to sell their homestead at $4000. The attorney sold the land to Moore, who conveyed the land back to the husband for a recited con-sideration of $2200 cash and promissory notes for $1800 secured upon the property. In accordance with an agreement to separate the husband was to assume the debts, and his share was the $2200; the wife to take $1800. Possession of the property was sur-rendered, but afterwards resumed. In an action upon the promissory notes and to foreclose the lien, the wife interposed as a defense that the transaction was merely an attempt to make a loan upon the homestead. See facts held to sustain the lien, and evidencing a bona fide sale by the trustee.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart.

This is a second appeal. 73 Texas, 111. It is purely a question of fact. The testimony is voluminous. An outline of it is given in the opinion. The contention was whether the transaction was a bona fide sale of the homestead or was an attempt to create a lien upon the home-stead. The report on the first appeal and the opinion here give a suffi-cient outline of the facts.

*A. Sampson, John Lovejoy, W. M. Jerdone,* and *James B. & Charles J. Stubbs,* for appellants. — 1. "No mortgage, trust deed, or other lien on the homestead shall ever be valid except for the purchase money therefor or improvements made thereon, whether such mortgage or trust deed or other lien shall have been created by the husband alone or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void." Const., art. 16, sec. 50.

2. To this may be added, as a specific proposition based on the facts of this case, the result of the decision of this court on the former appeal of this case: A sale, purporting to have been for cash in hand, of the homestead by husband and wife, followed by a reconveyance by the vendee to the husband for the same price, a part of which is secured by vendor's lien, the whole transaction being but a means to secure a loan by the vendee to the husband, is void. O'Shaughnessy v. Moore, 73 Texas,

108; Heidenheimer v. Stewart, 65 Texas, 321; Inge v. Cain, 65 Texas, 75; Hurt v. Cooper, 63 Texas, 362; Zapp v. Strohmyer, 75 Texas, 638.

*Geo. W. Davis* and *Davidson & Minor*, for appellee. — 1. Appellee having upon the faith of the representations of J. P. and Mary O'Shaughnessy as to their purpose and agreement to sell their homestead, and of their power of attorney to W. B. Denson to make such sale, purchased and paid out money for said property in good faith; and the said J. P. and Mary O'Shaughnessy having executed and delivered to appellee a deed therefor, and received and appropriated to their own use the proceeds of such sale and otherwise admitted the validity thereof, they and their heirs are estopped and precluded from claiming that said sale was invalid and of no effect. Bige. on Estop., sec. 1278; Mortgage Co. v. Norton, 71 Texas, 683; Schwarz v. Bank, 67 Texas, 218; Cravens v. Booth, 8 Texas, 243; O'Brien v. Hilburn, 9 Texas, 297.

2. Appellants having, in response to the petition of appellee, filed a cross-bill, wherein they set forth all the facts claimed by them rendering the sale of the property to appellee invalid, and having sought by such cross-bill to cancel the deeds to appellee as cloud upon their title, and praying that such deeds might be canceled and the cloud removed, before any judgment could be rendered canceling such deeds it was necessary for appellants to do equity and tender to appellee the amount of purchase money they had received from appellee for said property. Rule 7 for Dist. Ct.; 1 Pome. Eq. Jur., sec. 385, *et seq.;* Loving v. Milliken, 59 Texas, 423–26; Saunders v. Howard, 51 Texas, 23.

HOBBY, JUDGE.—It appears from the record in this case that J. P. and Mary O'Shaughnessy, who were husband and wife, and resided on and owned lots 8, 9, 10, 11, and 12, in out lot 138, in the city of Galveston, as their then homestead, executed on April 3, 1886, to W. B. Denson, an attorney of said city, a power of attorney properly acknowledged authorizing him to sell and convey said property. It was understood between the parties that the property was to be sold for not less than $4000.

On April 9, 1886, Denson, as attorney in fact for J. P. and Mary O'Shaughnessy, conveyed the same to appellee for a recited consideration of $4000.

On April 10, 1886, appellee Moore conveyed the same property to said J. P. O'Shaughnessy for a recited consideration of $2200, acknowledged to have been paid to Moore by O'Shaughnessy, and the execution and delivery by the latter to Moore of four promissory notes for $1800, bearing 12 per cent interest, and due respectively in six, twelve, eighteen, and twenty-four months from date, reserving therein a vendor's lien on the lots and improvements. On the same day, and to secure the payment of these notes, O'Shaughnessy executed a deed of trust conveying said prop-

erty to one A. P. Luckett as trustee to secure the payment of the notes. The first note was paid by Mrs. O'Shaughnessy, and also $100 on the second. To enforce the payment of the two remaining notes each for $500 and the other for $300, and to foreclose his vendor's lien on said property, appellee on November 28, 1887, instituted suit against J. P. O'Shaughnessy, the maker of the notes, and Mrs. Mary O'Shaughnessy, who had moved off of the premises. She, however, returned in a short time and was in possession of the property and was joined in the suit.

The answer of Mrs. O'Shaughnessy to the petition of Moore alleged, in substance, that the conveyances from their attorney in fact to Moore and from Moore to O'Shaughnessy were made without her knowledge or consent, were pretended and fictitious; that the recited considerations therein were false and pretended; that no bona fide sales were intended or executed, but that the same were devised as sham and pretense, and were in fraud of her homestead rights, and were concocted and contrived to enable the said J. P. O'Shaughnessy, her husband, to borrow and appellee James Moore to loan $1800 at high interest, to-wit, twelve per cent, and were intended to evade the provisions of the Constitution prohibiting the raising of money on the homestead by any pretended sale with conditions of defeasance; that the trust deed to A. P. Luckett to secure said four notes executed by J. P. O'Shaughnessy was of the same character, and altogether void, as were said other conveyances; that said pretended sales and conveyances and said trust deed operated as a cloud upon her title, and she prayed the same might be declared void and annulled.

J. P. O'Shaughnessy adopted her answer, and alleged homestead in the premises for many years and continuous possession of the same, and no other homestead.

The cause was tried at the February Term, 1888, of the District Court, and judgment rendered in plaintiff's favor for the amount claimed by him, together with a foreclosure of the lien. From this defendants appealed, and the Supreme Court reversed the case on the facts and remanded it for a new trial. 73 Texas, 108.

On July 15, 1889, Honora Cobb, joined by her husband Thomas A. Cobb and Mary Ann O'Shaughnessy, appeared in the cause and made known to the court that defendant Mary O'Shaughnessy, their mother, had died intestate on June 19, 1889; that they, Honora and Mary A., were her children and only heirs; that there was no administration on her estate or necessity therefor, and they made themselves parties. As Mary O'Shaughnessy was a minor, a guardian *ad litem* was appointed who represented her on the trial.

The minor, after due service, having appeared at the October Term, alleged through her guardian *ad litem* that she and Mrs. Honora Cobb, as the only children and heirs of the deceased, Mary O'Shaughnessy, succeeded to all her rights to the property in question; that said minor and

her father J. P. O'Shaughnessy, defendant, then and for more than five years prior thereto, occupied, used, and enjoyed the premises as a homestead; that he was the head of a family so constituted; that her mother for more than five years preceding her death had also continuously used, occupied, and enjoyed said premises as a homestead; and joined in the previous defenses interposed.

Plaintiff filed a second supplemental petition, renewing the averments of the petition and traversing the answers filed, claiming that Mary O'Shaughnessy and her heirs were estopped from denying the validity of plaintiff's lien, and ought not to be heard to resist the foreclosure thereof because of the receipt of $1800 of the purchase money paid by appellee, and no part of the same is tendered back, etc.

The cause was again tried by the court on November 16, 1889, and judgment rendered against J. P. O'Shaughnessy in favor of the appellee for $1794.81, with interest from that date at the rate of 12 per cent per annum, etc., and the vendor's lien on the premises was foreclosed together with the deed of trust, and an order of sale and writ of possession, etc., directed to issue.

From that judgment this appeal is prosecuted upon several assignments, the first six of which are grouped together as embodying substantially the same doctrine.    The question raised by the first six assignments in appellants' brief, and upon which, in our opinion, this case necessarily turns, is whether the court "erred in finding by its judgment that the several conveyances, to-wit, the deed from W. B. Denson, attorney in fact for J. P. and Mary O'Shaughnessy, to appellee James Moore, and the deed from Moore to J. P. O'Shaughnessy, and the trust deed from J. P. O'Shaughnessy to A. P. Luckett, were in fact what they purported on their faces to be, bona fide conveyances; and in refusing to hold and find from the evidence that said instruments were all contemporaneous and parts of the same preconcerted and illegal scheme devised, etc., between the parties thereto, and by means of which Moore should be enabled to loan to said J. P. O'Shaughnessy the sum of $1800 at 12 per cent interest on the security of lots 8, 9, 10, 11, and 12 in said out lot 138, which were the homestead of J. P. and Mary O'Shaughnessy;" and also erred in not finding from the evidence as to the execution of the instruments referred to that it was "but an attempt to evade the imperative provisions of the Constitution inhibiting any species of conveyance of the homestead having for its purpose the borrowing of money upon it as security."

Upon the former appeal in this cause the Supreme Court, with the facts then before it, held that "the testimony of the defendants (appellants) clearly established that the whole transaction, while assuming the form of an absolute sale of the homestead, was intended and understood by appellant J. P. O'Shaughnessy, Moore, and the attorney who negotiated the transaction as but a means whereby a loan of $1800 by appellee to

J. P. O'Shaughnessy should be secured, of all of which Mrs. O'Shaughnessy was kept ignorant." In opposition to this, "the testimony of appellee," it was said, then before the court "tends to show that the sale of the homestead was real, but it develops such facts as are inconsistent with such a conclusion." 73 Texas, 111.

With this evidence *tending only to show* a character of conveyance of the homestead recognized by the Constitution and laws as valid, opposed to testimony *clearly establishing a species of conveyance or transaction* with reference to the homestead prohibited by the Constitution, it was well held by the court that the "evidence was such as to forbid the affirmance of the judgment of the court below." 73 Texas, 112.

The evidence contained in the record now before us is, in many important features, entirely different from that shown by the statement on a former appeal. It is direct and positive in support of the claim alleged by appellants that the entire transaction was but a conveyance of the homestead to secure the payment of a loan of $1800, with interest, etc. Equally emphatic and direct is it, on the other hand, in sustaining the position of appellee that it was an absolute bona fide sale and conveyance of the homestead by the attorney in fact of J. P. and Mary O'Shaughnessy to appellee Moore, and by the latter to J. P. O'Shaughnessy.

The testimony in the case is voluminous, covering more than one hundred pages of the printed record. A reproduction of it here would accomplish no good purpose. It is only necessary to say of it that O'Shaughnessy's evidence, supported by other testimony, is clearly to the effect that the conveyances executed on April 9 and 10, 1886, to-wit, the conveyance from Denson, as attorney, to appellee, and from appellee to himself, were, as contended by appellants, for the purpose of securing the payment of a loan of $1800 with 12 per cent interest made by Moore to said O'Shaughnessy, and that this was understood and agreed upon between said attorney, appellee, and himself; and further, that it was well understood between them that it was to be kept secret from Mrs. O'Shaughnessy.

The evidence of the attorney in fact for J. P. and Mary O'Shaughnessy and that of appellee Moore is unqualified as to the effect that the conveyance to Moore by the attorney was absolute, real, and a completed sale, and possession delivered of the property to appellee by J. P. and Mary O'Shaughnessy. That she understood and was fully cognizant of the entire transaction, and that nothing was kept secret or agreed to be so kept from her. That no question of a loan upon the property as a security therefor was brought into the case. That the sale by the attorney to appellee was complete before appellee sold to J. P. O'Shaughnessy. That there was no understanding that the latter was to have the property back when appellee bought. The deed to appellee was executed April 9, and that from him to O'Shaughnessy on the 10th of April, 1886. Both were acknowledged on the 10th of April, 1886. O'Shaughnessy and wife

delivered the keys of the house to appellee and moved out. It appears to have been arranged between O'Shaughnessy and wife that they should separate and live apart, and that, as he was to assume the payment of the community debts, he was to receive $2200 of the $4000 to be paid by Moore, and she was to receive $1800, after deducting the attorney fees, etc.

There is evidence to the effect that she did receive her portion of the recited consideration of $4000. The $2200 was not paid to O'Shaughnessy by Moore, but was subject to the demand of the attorney from the time of the execution of the deed. This amount not having been paid to O'Shaughnessy when Moore sold the place to him, he credited O'Shaughnessy with the $2200 and took his notes for the balance, $1800 with interest at 12 per cent, as before stated. This interest on the deferred payments appellee testifies was what he made in the transaction.

From the foregoing brief recital of the testimony in this case, as disclosed in the record before us, it is obvious that it is wholly irreconcilable.

It is apparent from the record that if the appellants' testimony is to be believed the transaction was a device contrived to negotiate a loan by appellee of $1800 to O'Shaughnessy, to secure which the trust deed was executed. If appellee's evidence is accepted it was a real sale of the property in due form of law and the possession delivered by the parties to him.

The witnesses testifying were before the court and their evidence was passed upon.

The sole question now presented for our decision as the case now stands is simply whether there is evidence authorizing the decree of the court below.

That the conclusion of this court may have been otherwise is not the true rule applicable to cases of this character, as is well known. But the question is, is there sufficient evidence to support the judgment? Unless we can say that there is not, then to set the judgment aside on that ground would be violative of a principle established by a greater number of cases, probably, than any other in our State.

As we can not say, then, that the evidence does not support the judgment, it should be affirmed.

*Affirmed.*

Adopted March 25, 1890.